[Civ. No. 9513.   Third Dist.   Apr. 14, 1959.]

RALPH MONTY, Appellant, v. MARINO ORLANDI, Respondent.

Robert F. Appel for Appellant.

Keith, Creede & Sedgwick and Frank J. Creede for Respondent.

SCHOTTKY, J.—Plaintiff Ralph Monty commenced an action against the above-named defendants [Martin Orlandi, individually and doing business under the firm name of Marino's Club, and John Collie] to recover for injuries sustained when plaintiff was struck by defendant John Collie, who was a bartender in the employ of defendant Marino Orlandi.

It appears from the record that on the evening of October 16, 1955, Monty entered Marino's Club in Arcata, California, in the company of a friend. They sat at the bar and had a few drinks. Two ladies were also sitting at the bar. About 9:30 p. m. the bartender, Collie, came out from behind the bar, grabbed one of the ladies, his common-law wife, twisted her arm and started to eject her from the bar. Monty said, ''that's an awful way to treat a woman.'' The bartender released the lady and swung around and hit Monty on the jaw. Monty fell to the floor and after he got up he asked the bartender what the idea was. The bartender replied that he was running the bar and that he would run it to suit himself. He also said he would break the other side of Monty's jaw, and he did.

Collie had been employed by Duane Godden, who was the manager of the bar. Godden had known Collie about four months prior to the time that he had employed him. During

this period he had observed him while he was a patron in the bar and there was nothing in his demeanor to indicate that Collie was pugnacious. In contrast, however, there is testimony in the record that Collie was hot tempered and that several months before he had gotten into an altercation in the club.

Marino Orlandi testified that one of the duties of the bartender was to keep things quiet in the bar.

Collie's ''wife,'' Doy, who was being ejected at the time Monty was injured, said that prior to the incident Collie had told her several times that she had had enough to drink and to go home. She also testified that the matter was personal between the two of them.

Monty's jaw was broken in three places as a result of the blows on it. He brought this action against Collie and Marino Orlandi. Collie did not answer, and the jury was instructed to bring a verdict against Collie. The jury awarded compensation in the sum of $4,800 general damages and $10,000 punitive damages against Collie. The jury brought in a verdict in favor of Orlandi, and Monty has appealed from the judgment in Orlandi's favor.

Appellant contends that the court erred in not directing a verdict against the owner of the bar, defendant Orlandi. Appellant contends also that the court erred in giving certain instructions and in refusing to give certain instructions offered by appellant.

As stated in *Carr* v. *Wm. C. Crowell Co.,* 28 Cal.2d 652, at page 654 [171 P.2d 5] :

''It is settled that an employer is liable for wilful and malicious torts of his employee committed in the scope of the employment. [Citing cases.] . . .

''Defendant contends that Enloe was not acting in the scope of his employment when he injured plaintiff, on the grounds that the throwing of the hammer did not further defendant's interests as an employer and that Enloe could not have intended by his conduct to further such interests. It is sufficient, however, if the injury resulted from a dispute arising out of the employment. Under the provisions of section 2338 of the Civil Code a principal is liable for 'wrongful acts' of his agent committed 'in and as a part of' the principal's business. 'It is not necessary that the assault should have been made ''as a means, or for the purpose of performing the work he (the employee) was employed to do.'' ' [Citing cases.] In *Stansell* v. *Safeway Stores, supra,* 44 Cal.App.2d 822 [113

P.2d 264], one of defendant's grocery store managers was held to be acting in the scope of his employment when he quarreled with a customer over an order, and after an exchange of opprobrious names, ran after and injured her. In *Hiroshima* v. *Pacific G. & E. Co., supra,* 18 Cal.App.2d 24 [63 P.2d 340], it was held that the defendant's employee, whose duties were to collect power bills, was acting in the scope of his employment when he struck a customer in the course of a dispute as to whether the customer had received a notice that his electric service would be discontinued if he did not pay his bill.

■ "The employer's responsibility for the tortious conduct of his employee 'extends far beyond his actual or possible control over the conduct of the servant. It rests on the broader ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others' while acting in the scope of their employment. [Citing cases.] . . .

. . . . . . . . . . . .

■ "If an employee inflicts an injury out of personal malice, not engendered by the employment, the employer is not liable [Citing cases.] . . ."

■ In the instant case there was testimony that Collie, the bartender, had told Doy, his common-law wife, who was sitting on a stool at the bar, that she had had enough to drink and ordered her to go home, which she refused to do; that Collie then came from behind the bar, grabbed Doy and started to eject her from the barroom; that appellant got off the stool on which he was sitting at the bar and walked toward Collie and said, "that's an awful way to treat a woman," whereupon he was struck by Collie. From this testimony an inference could be drawn that Collie's ejection of Doy was a personal matter and was not concerned with the maintenance of order in the bar. The assault upon appellant resulted from this incident. Under such circumstances the question was properly left to the jury since the assault may not have been in the course of Collie's employment, for as stated in *Fields* v. *Sanders,* 29 Cal.2d 834, at page 839 [180 P.2d 684, 172 A.L.R. 525]: ". . . Of course, where the agent, for however brief a space of time has ceased to serve his principal, he alone is responsible for his acts during the period of such cessation."

■ We do not agree with appellant's contention that it was error to refuse to direct a verdict against Orlandi on the theory that he was reckless or negligent in hiring Collie. The

rule is stated in Restatement of the Law, Second, Agency 2d, section 213, that "A person conducting an activity through servants . . . is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . (b) in the employment of improper persons . . . involving risk of harm to others: . . ."

Comment d. reads in part:

"The principal may be negligent because he has reason to know that the servant . . ., because of his qualities, is likely to harm others in view of the work . . . entrusted to him . . .

". . . An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due car in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. . . ." (See also *Rahmel* v. *Lehndorff*, 142 Cal. 681 [76 P. 659, 100 Am.St.Rep. 154, 65 L.R.A. 88].)

In the instant case Orlandi's manager testified that he had observed Collie over a period of time and that there was nothing in his demeanor to indicate that he was pugnacious. In view of this testimony the question of due care in the selection of the employee Collie was properly left to the jury.

█ Unless this court can say that the relationship between the respondent bar owner and the appellant patron is such that the bar owner has a duty to protect the patron that he may not delegate, the question whether or not the employee was acting within the scope of his employment was germane. (Harper & James, The Law of Torts, vol. 2, p. 1391.) █ California holds that no such duty exists between a bar owner and a patron. (*Rahmel* v. *Lehndorff, supra; Kingen* v. *Weyant,* 148 Cal.App.2d 656 [307 P.2d 369]; see also ann. 34 A.L.R.2d 376.)

█ Appellant contends that the court erred in giving the following instruction:

"If you should find from the evidence that the duties of the bartender, John Collie, include not only the serving of customers but also the maintaining of order in the bar room under his control, then the bar owner can be held liable for his employee's assault upon a customer though the employer has instructed the employee against the use of force and the bartender violated the order in so doing."

Appellant argues that this instruction was erroneous because it placed the burden on appellant of proving that a bartender in sole charge of a bar is also required to keep the peace. While the issue might well have been withdrawn from the jury since Orlandi testified that Collie's duties included keeping things quiet in the bar, we do not believe that the instruction was erroneous. The burden was upon appellant to show that at the time he suffered the injuries the relationship of master and servant existed and that the wrongful act was within the scope of the servant's employment. (*Tarasco* v. *Moyers,* 81 Cal.App.2d 804, 810 [185 P.2d 86].) Further, as respondent points out, the instruction was not concerned with the burden of proof, but told the jury that Orlandi could be held liable even if the act was done contrary to the specific orders of Orlandi.

█ Appellant next challenges the following instruction:

''If you find that the defendant, Marino Orlandi, failed to exercise the judgment of an ordinarily prudent man in hiring the defendant, John Collie, and provided you have determined that John Collie was a man of known vicious propensities, which an ordinarily prudent man would have discovered, then plaintiff, Ralph Monty, is entitled to judgment against defendant, Marino Orlandi, for all of the damages proximately caused by defendant, John Collie.''

While this instruction would be erroneous and likely to mislead the jury if it were the only instruction given on this phase of the case, yet when all of the instructions are considered as a whole, as we are required to do, we do not believe that it can be held to be prejudicially erroneous. For the court had already instructed the jury as follows:

''You are instructed that there is no evidence in this case which would tend to show that the plaintiff, Ralph Monty, was either negligent, or conducted himself in a wilful, wrongful, or unlawful manner, so as to provoke the assault and battery committed upon him by the defendant, John Collie, and you are therefore instructed that in determining the issues in this case, the evidence clearly shows that the defendant, John Collie, without just cause, committed an assault and battery upon the plaintiff, Ralph Monty.''

''You are instructed that the issues to be decided by you in determining the liability or non-liability of the defendant, Marino Orlandi, are as follows:

''Was the assault and battery committed by John Collie,

done in and as a part of the transaction of the business owned by Marino Orlandi?

"If you should resolve this issue in the affirmative, then, you will render your verdict in favor of the plaintiff, and against the defendant, Marino Orlandi, and assess damages in accordance with these instructions.

"If you should resolve this issue in the negative, you then have a further issue to determine, namely, did the defendant Marino Orlandi, through negligence, employ a person of objectionable characteristics, temperament, or propensity, rendering him liable to assault such persons that may enter his place of business?"

■■■ Appellant also contends that the court erred in giving the following instruction:

"If you find from the evidence that defendant Marino Orlandi was in the exercise of ordinary care immediately prior to and at the time of the accident, then I instruct you that he had the right in the absence of reasonable ground indicating otherwise to assume that John Collie would exercise ordinary care and caution and would not engage in any unlawful assault and battery upon a patron of the Club."

While this instruction likewise might tend to mislead and confuse the jury if it were the only instruction dealing with this phase of the case, yet, when all of the other instructions given by the court are considered as a whole, we do not believe that it can be held to be prejudicially erroneous.

We are satisfied from a careful study of all of the instructions that, taking the instructions as a whole, the jury was fully and correctly instructed. While the jury might well have returned a verdict in favor of appellant, we cannot say that the verdict in favor of respondent Orlandi is without support in the record. The jury was told clearly that if the assault upon appellant by Collie was done as part of the transaction of Orlandi's business their verdict should be in favor of appellant. The jury was told also that if Orlandi through negligence employed a person whom he should have known was likely to commit an assault on persons entering the place of business, they should render a verdict in favor of appellant and against Orlandi. Under such circumstances we can only conclude that the jury determined that the assault upon appellant was a personal altercation between appellant and Collie, that it was not in the course of Collie's employment by Orlandi, and also that Orlandi was not negligent in em-

ploying Collie. These were issues of fact to be determined by the jury and their determination of said issues upon conflicting evidence is binding upon us.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.