517 A.2d 530

**Ciro A. IANDIORIO, Appellant,**

v.

**KRISS & SENKO ENTERPRISES, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued March 5, 1986.
Decided Nov. 17, 1986.

Edwin H. Beachler, McArdle, Caroselli, Spagnolli & Beachler, Pittsburgh, for appellant.

Seymour A. Sikov, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, HUTCHINSON, McDERMOTT and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.*

The question for our consideration in this appeal is whether an employer who has instructed his employees to take their coffee breaks and to smoke in only one area of a job site may be held liable for injuries to a third party who entered the designated smoking area wearing gasoline drenched clothing and was burned when an employee struck a match to light a cigarette, and, specifically, whether the lower court erred in ruling, as a matter of law, that an employer cannot be held liable in such circumstances.

The Court of Common Pleas of Allegheny County granted appellee's motion for compulsory nonsuit at the close of appellant's case on liability tried before a jury. A motion to strike the nonsuit was denied by the trial court *en banc*, and the decision was appealed to the Superior Court. A panel of three Superior Court judges, in a memorandum opinion (per Rowley, J., DelSole, J., and Montgomery, JJ.), affirmed the denial. We granted appellant's petition for allowance of appeal, and we now reverse.

The lower court, reviewing the evidence in the light most favorable to appellant, as it is required to do on a motion to take off a compulsory nonsuit,[1] relied on the following facts which it set forth as follows:

---

* This case was reassigned to this author on September 10, 1986.

1. The trial court cited, as controlling its review, *Dorofey v. Bethlehem Steel Co.*, 407 Pa. 288, 180 A.2d 562 (1962). Our standard of review in determining the validity of a compulsory nonsuit is:

   ... plaintiff must be given the benefit of every fact and reasonable inference arising from the evidence. (Citations omitted.) All con-

The Plaintiff, [appellant herein] Ciro A. Iandiorio, age 18 at the time of the events in question, commenced employment with the Robinson Petroleum Company in the spring of 1979, as a gasoline station attendant at a Mobil gasoline station operated on his employer's premises. Among the duties performed by Iandiorio included the pumping of gasoline for customers of the station utilizing the station's full service pumps and the collection of money from those patrons electing to make use of the station's self-service gasoline pumps (Tr. 20). The full service pumps were located on a cement "island" located closest to the station's physical structure while the self-service pumps were located on a separate "island" which was situated further away from the station building and closer to the highway which the station fronted. (Tr. 22).

Sometime in the beginning of June of 1979, construction began on the renovation of the station's structure in order to convert the same into a "7–Eleven" convenience store. The defendant, [appellee herein] Kriss and Senko Enterprises, Inc., was contracted by "7–Eleven" and not the Robinson Petroleum Company (Tr. 91) to perform the remodeling work at the subject station. During this period of construction, the full service pumps were shut down and the plaintiff's duties were to collect money from those patrons utilizing the self-service pumps. (Tr. 22).

On the morning of June 25, 1979, Iandiorio arrived at work at approximately 7:15 A.M., at which time he opened the station for business by unlocking the service bay doors and entering the garage structure which at the time had been virtually gutted by the remodeling work in process. [sic] Shortly after electronically turning the station's gasoline pumps on from inside the structure, Iandiorio looked out the station's window and discovered

flicts in the testimony must be resolved in plaintiff's favor and the entry of the compulsory nonsuit is only supportable in a clear case where the facts and circumstances have as the only conclusion the absence of liability.
*McNally v. Liebowitz*, 498 Pa. 163, 170, 445 A.2d 716, 719 (1982).

that a customer at the self-service "island" was apparently experiencing some difficulty with the operation of one of the pumps (Tr. 25), whereupon the plaintiff went outside to the pumps in order to attempt to rectify the problem. While attempting to fix the nozzle of the malfunctioning pump, the plaintiff spilled gasoline onto the thigh area of his right leg, thereby saturating the clothing covering this area of his body. The gasoline spillage was apparently caused by the splitting of a hose of the subject pump about six inches down from the nozzle sometime during the preceding night. (Tr. 26).

According to Iandiorio, he thereupon went back into the station building whereupon he observed two brothers, one Michael Simon, an independent contractor hired by Kriss and Senko, and William Simon, an employee of Kriss and Senko, on a break near a desk which was located inside the building, where they were drinking coffee. (Tr. 28). Iandiorio further testified that upon entering the building, he advised both Simon brothers of the presence of gasoline upon his clothing. The plaintiff's evidence viewed in its most favorable light next discloses that notwithstanding his actual knowledge of the presence of gasoline upon Iandiorio's clothing, William Simon proceeded to light a cigarette while Iandiorio was standing only a few feet away as a result of which the plaintiff's clothing ignited and the plaintiff was seriously burned. The evidence further indicates that the above incident occurred during William Simon's scheduled working hours with defendant, Kriss and Senko.

Opinion and Order of Court at 1–3 (November 12, 1982).

The trial court's recitation of the facts omitted to include testimony by an officer (Mr. Raymond Michael Senko) of appellee Kriss and Senko Enterprises, Inc., which established the critical fact that appellee knew its employees smoked on the job and, recognizing the hazards of smoking in close proximity to gasoline, ordered its employees to take their coffee breaks and to smoke their cigarettes inside the

building where the accident occurred. Notes of Testimony, March 15, 16, 1982, at 92–95, 98–99.

This fact is critical to the dispute in this case because of the line drawn under the doctrine of respondeat superior between mere permission given employees to perform personal acts during the workday and a more active control on the part of the employer over its employees' personal acts. The general principles of the applicable law are stated in Comment c. to Section 229 of the Restatement (Second) of Agency, which provides:

c. *Acts of a personal nature.* Although the servant is authorized to act, the master is not liable for his conduct unless the servant is in fact acting in the employment and for his master's purposes. Getting ready to work or clearing away after work may be within the scope of employment. So, even *such personal matters as eating and cleaning of the person may be so much a part of the work and under such control that it is part of the employment. This is true if the master assumes control over the general conduct of the servant during such period.* If, however, such acts are for the personal convenience of the employees and are merely permitted by the master in order to make the employment more desirable, the acts are not within the scope of employment. As in other situations, the fact that the acts are done upon the master's premises or with his instrumentalities is important but not conclusive.

**Illustrations:**

8. P, an engraver, requires all servants employed in finishing work to wash their hands in his wash room before beginning work. The washing of hands by the employees as part of their daily work is within the scope of employment.

9. P, employing ball players, requires them to eat what he directs and under his supervision. The conduct of the players during meals while under P's control is within the scope of employment.

10. P furnishes a lavatory in which employees may wash, if they wish, before or after working hours, P retaining no control over it except with regard to keeping it clean. An employee turns on the water to wash his hands after hours and fails to turn it off. This act is not within the scope of employment.

Restatement (Second) of Agency § 229, Comment c. (emphasis added)

The trial court ruled as a matter of law that *any* personal act, such as smoking during a coffee break, is not within the scope of employment, thereby wresting the issue of the employer's acknowledgment and control of the personal act from the jury where that issue properly lay for resolution. *Anzenberger v. Nickols,* 413 Pa. 543, 198 A.2d 309 (1964); *Davis v. Tredwell,* 347 Pa. 341, 32 A.2d 411 (1943). It is a well settled principle of law in this Commonwealth that:

Where the facts are in dispute or more than one inference can be drawn therefrom, the issue whether or not the servant was acting for the defendant and within the scope of his employment is for the jury and the surrounding facts and circumstances are to be considered by the jury in this inquiry.

*Davis v. Tredwell,* 347 Pa. at 344, 32 A.2d at 412–13 (citations omitted). The extent of control is a decisive factor in whether or not the personal act may be considered a part of or incident to the employment.

The court en banc and the Superior Court, in affirming the trial court, relied upon the decision of the Pennsylvania Supreme Court in *Herr v. Simplex Paper Box Corporation,* 330 Pa. 129, 198 A. 309 (1938), to support their view that William Simon was not acting within the scope of his employment when he lit his cigarette.

In the *Herr* case, the Supreme Court of Pennsylvania held that an employer was not liable for an employee's negligent lighting of a cigarette because "smoking was an act in no way connected with the business of his employer or with service to it, ... it was not part of [the employee's]

duty to strike the match, or an act the performance of which was in any way in furtherance of his employer's business, but was done by him on his own account," and *because the employer knew nothing of the employee's smoking.* 330 Pa. at 132–33, 137, 198 A. 309. In so holding, that Court recognized a line of cases from sister states which held an employer could be found liable for damages caused by an employee's smoking in certain situations. One such situation is where an employer has knowledge of the propensity of his employees to smoke, which habit they were likely to indulge in while at work. The *Herr* Court stated:

> The question in these cases was not whether the men in smoking were acting within the scope of their employment but *whether the doing of the act was to be reasonably apprehended by [the employer].*

*Id.*, 330 Pa. at 136–37, 198 A. 309 (emphasis added). Because no evidence was presented in *Herr* to charge the employer with knowledge of its employees' propensity to smoke, that Court held there was insufficient evidence to hold the employer liable.

That is not the case here. The record clearly demonstrates that appellee, the employer in this case, not only knew that its employees smoked at work, but, in fact, dictated where employees should take breaks and smoke. This is sufficient control over the employees' conduct to bring these activities within the scope of employment. From the evidence presented at trial in the instant case, a jury could reasonably find that appellee exhibited such control over its employees' smoking habits as to bring the employees' actions within the scope of their employment.

Therefore, since the facts and circumstances in this case presented questions of fact that should have been submitted to the jury, we hold that the trial court erred in granting appellee's motion for a compulsory nonsuit, and hereby reverse the order of the Superior Court and remand to the trial court to strike the compulsory nonsuit.

ZAPPALA, J., did not participate in the consideration or decision of this case.

NIX, C.J., filed a dissenting opinion.

FLAHERTY, J., filed a dissenting opinion in which NIX, C.J., joins.

NIX, Chief Justice, dissenting.

I agree with the analysis set forth in the dissenting opinion of Mr. Justice Flaherty and, therefore, join that opinion. I write to address the majority's emphasis upon appellee's direction to its employees assigned to this job relating to smoking during their rest periods.

Both the majority and the dissent accept section 229(c) of the Restatement (Second) of Agency as instructive in this appeal. That section provides:

> c. *Acts of a personal nature.* Although the servant is authorized to act, the master is not liable for his conduct unless the servant is in fact acting in the employment and for his master's purposes. Getting ready to work or clearing away after work may be within the scope of employment. So, even such personal matters as eating and cleaning of a person may be so much a part of the work and under such control that it is part of the employment. This is true if the master assumes control over the general conduct of the servant during such period. If, however, such acts are for the personal convenience of the employees and are merely permitted by the master in order to make the employment more desirable, the acts are not within the scope of employment. As in other situations, the fact that the acts are done upon the master's premises or with his instrumentalities is important but not conclusive.

*Id.*

The appellee, recognizing that his employees during the break periods were likely to smoke and realizing the danger posed by the presence of gasoline, directed them to take their free periods inside the building which was removed

from the area where the gasoline pumps were situated. The majority, relying upon this exercise of control, concluded that the conduct causing the injury was conduct for which the employer should be held vicariously responsible. In my judgment such reasoning is overly simplistic and does not reflect the true intention of section 229(c) and will deter employers from taking extra precautions to assure the safety of the work place.

The danger known to the employer when the contract was undertaken was that of employees smoking in the area of the pumps. He properly instructed his employees to refrain from such conduct *and they complied.* Clearly, this direction did not charge the employer with responsibility for his employees smoking whenever an accident may have occurred and without regard to the factors causing the event. In this instance, if the employee, during the break, had been in a location off the work site and the plaintiff had approached him, the same unfortunate result would have obtained.

The thrust of section 229(6) must be read in view of section 235 which exempts conduct which is not for the purpose of serving the master.[1] The mere fact that an employer gives a direction beyond the actual performance of the task to be performed, which is complied with does not provide an excuse to expand the employer's liability for actions clearly beyond the scope of employment. The control exercised by the employer was to prevent injury from a flame being exposed to the gas pumps. Such an incident was avoided by that instruction. There is no basis for concluding that such a directive should expose the employer to any injury that might result from an employee's careless smoking.

1. Section 235 provides:
   § 235. Conduct Not for Purpose of Serving Master
   An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.

FLAHERTY, Justice, dissenting.

I dissent.

The majority holds that the employer, Kriss & Senko Enterprises, is vicariously liable for injuries suffered when a gasoline drenched employee entered a work area and was burned when a fellow employee lit a cigarette, igniting his clothing. The rationale for liability is Section 229 of the Restatement (Second) of Agency, which sets out the generally accepted principles developed by courts dealing with the subject:

> c. *Acts of a personal nature.* Although the servant is authorized to act, the master is not liable for his conduct unless the servant is in fact acting in the employment and for his master's purposes. Getting ready to work or clearing away after work may be within the scope of employment. So, even such personal matters as eating and cleaning of the person may be so much a part of the work and under such control that it is part of the employment. This is true if the master assumes control over the general conduct of the servant during such period. *If, however, such acts are for the personal convenience of the employees and are merely permitted by the master in order to make the employment more desirable, the acts are not within the scope of employment. As in other situations, the fact that the acts are done upon the master's premises or with his instrumentalities is important but not conclusive.*

Illustrations:

> 8. P, an engraver, requires all servants employed in finishing work to wash their hands in his wash room before beginning work. The washing of hands by the employees as part of their daily work is within the scope of employment.
>
> 9. P, employing ball players, requires them to eat what he directs and under his supervision. The conduct of the players during meals while under P's control is within the scope of employment.

10. P furnishes a lavatory in which employees may wash, if they wish, before or after working hours, P retaining no control over it except with regard to keeping it clean. An employee turns on the water to wash his hands after hours and fails to turn it off. This act is not within the scope of employment.

(Emphasis added.)

What is plain from Section 229 and its illustrations is that personal acts of employees may be within the scope of employment *when they are part of the work,* but not when they are for *"personal convenience of the employees and are merely permitted by the master in order to make the employment more desirable...."* Smoking is an activity which is in no way related to the work of remodeling a service station, and is permitted solely for the personal convenience of the employees to make their work more desirable. The conclusion is inescapable, therefore, that smoking is not within the scope of employment applying Section 229 and that the employer, therefore, is not vicariously liable for the injuries suffered by Iandiorio.*

Whether a given act is within the scope of employment is a question with which courts have been repeatedly faced. The difficulty has been not so much that the law is unclear as that application of the law to the facts has been uncertain. The general principles of the applicable law are stated in the *Restatement of Agency, 2d:*

### § 228. General Statement

(1) Conduct of a servant is within the scope of employment if, but only if:

---

* For reasons that are not apparent from the record, it has not been raised on appeal, although it was pleaded and argued at the trial level, that Kriss & Senko were directly negligent.

   Nor has it been argued that Iandiorio's own testimony bars his recovery on the grounds that, according to that testimony, William Simon's conduct was reckless or malicious (and therefore outside the scope of employment) in that Simon lit a match in spite of the fact that he was told of the presence of gasoline, witnessed his brother's alleged joking threat to ignite Iandiorio's clothing with a lighter, and could smell gasoline on Iandiorio's clothing. *See Lunn v. Yellow Cab Co.,* 403 Pa. 231, 236, 169 A.2d 103 (1961).

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

\*　　\*　　\*　　\*　　\*　　\*

**§ 235.  Conduct Not for Purpose of Serving Master**

An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.

**§ 236.  Conduct Actuated by Dual Purpose**

Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person.

The general theory of these rules is that while an employer ought to be answerable for acts committed by his employees when those acts are related to the employer's business, the employer ought not be liable when they are not.  In other words, an employer ought to be liable for injury caused by activity which he sets in motion, even if the acts in question are done through the agency of another person, but he ought not be liable for acts which the agent performs on his own and which are totally unrelated to the employer's business.  In a given case, however, it may be arguable whether an employer set a particular act in motion, whether an employee was acting on his own, or whether the act was related to the employer's business.

Superior Court correctly held that this case is governed by this Court's decision in *Herr v. Simplex Paper Box Corporation*, 330 Pa. 129, 198 A. 309 (1938).  In that case

we held that an employer was not liable for injuries suffered by plaintiff, who was burned while delivering gasoline to defendant's box manufacturing plant. Plaintiff was burned after he had spilled gasoline on himself while pouring it from five gallon cans into defendant's underground tank, and defendant's employee (according to plaintiff's testimony) walked from the plant toward the plaintiff in order to sign a receipt for the gasoline. As he approached plaintiff, the employee struck a match to light a cigarette and plaintiff's clothing ignited. The Court, over two dissents, held that the employer was not liable, because "Smoking was an act in no way connected with the business of his employer or with service to it", *Id.*, 330 Pa. at 132, 198 A. 309; because "It was not part of [the employee's] duty to strike the match, or an act the performance of which was in any way in furtherance of his employer's business, but was done by him on his own account...." *Id.*, 330 Pa. at 133, 198 A. 309; and because the employer knew nothing of the employee's smoking, *Id.*, 330 Pa. at 138, 198 A. 309.

Applying the holding in *Herr* to the present case, both lower courts reasoned that William Simon could not be regarded as acting within the scope of his employment. In *Herr* the employer was not liable for the employee's act even though the employee was in the process of securing a receipt when he struck the match which caused the injury. Therefore, the lower courts reasoned that William Simon could not be said to have been acting within the scope of employment because at the time of the injury he was on a break and was conducting no business of his employer.

I agree with this analysis. Although I would not comment on the continued viability of all aspects of the *Herr* decision, I am persuaded that Sections 228 and 235 of the Restatement 2d of Agency set forth a sound basis on which to assess questions of scope of employment. A plain reading of Sections 228 and 335 requires that in order for an employee to be regarded as acting within the scope of employment, he must, *inter alia,* be doing the kind of thing

he was employed to do and he must be acting, at least in part, with a purpose to benefit his employer. Lighting a match to smoke a cigarette while on a break is not the type of thing Simon was hired to do and it was not done for the purpose of serving his employer. Nor does it fall within Section 236 as activity which serves both the purposes of the master and of the servant. He was not, therefore, acting within the scope of his employment.

NIX, C.J., joins this dissenting opinion.